**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FLORENCIO MENDOZA JAVA, *individually and*
*on behalf of others similarly situated,*

                                               *Plaintiff*,

-against-

EL AGUILA BAR RESTAURANT CORP. (d/b/a EL
AGUILA), LAS BANDERAS SPORTS BAR
CATERING LOUNGE CORP. (d/b/a LAS
BANDERAS SPORTS BAR), SANTIAGO
ALMONTE, and JUAN ALMONTE.

                                     *Defendants*

-------------------------------------------------------------------X

                 **16-cv-6691 (AT) (JLC)**

                 **PROPOSED FINDINGS**
                 **OF FACT AND**
                 **CONCLUSIONS OF LAW**

       Plaintiff Florencio Mendoza Java, by his attorneys Michael Faillace & Associates, P.C.,

hereby submits his pre-trial proposed findings of fact and conclusions of law.

    <u>**Plaintiff's Proposed Findings of Fact**</u>

       1.      Plaintiff filed this present action in the United States District Court in the Southern

District of New York on August 24, 2016.

       2.      Defendant El Aguila Bar Restaurant Corp. (d/b/a El Aguila) owns, operates or

controls a restaurant located at 1404 Ogden Avenue, Bronx, New York 10452 under the name El

Aguila.

       3.      Defendant Las Banderas Sports Bar Catering Lounge Corp. (d/b/a Las Banderas

Sports Bar) owns, operates or controls a restaurant located at 1710 University Avenue, Bronx,

New York 10453.

       4.      Defendants Juan Almonte was the supervisor of Plaintiff and determined

employees' compensation, determined employees' work schedules, calculated employees' time

worked, prepared payroll, maintained payroll records, and paid employees of El Aguila and Los Banderas Sports Bar.

5.      Juan Almonte is an owner of El Aguila Bar Restaurant Corp.

6.      Plaintiff is a former employee of Defendants El Aguila Bar Restaurant Corp. (d/b/a El Aguila) and Las Banderas Sports Bar Catering Lounge Corp. (d/b/a Las Banderas Sports Bar) for purposes of the FLSA and NYLL.

7.      The employees of El Aguila Bar Restaurant Corp. and Las Banderas Sports Bar Catering Lounge Corp. regularly used ingredients and other items that have traveled or were produced in interstate commerce.

8.      At all times relevant to this action, Defendants had gross annual revenue in excess of $500,000.

9.      Defendants did not give any notice to Plaintiff, in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

10.      Plaintiff was employed by Defendants from approximately 2008 until on or about July 29, 2016.

5.      Defendants employed Plaintiff as a cook, dishwasher, porter, delivery worker, cashier, waiter, and other restaurant jobs.

6.      Plaintiff was a hospitality worker as understood in the New York State Hospitality Industry Wage Order.

7.      From approximately August 2010 until on or about July 2012, Plaintiff regularly worked in excess of 40 hours per week.

8.      From approximately August 2010 until on or about July 2012, Plaintiff worked at

El Aguila from approximately 8:00 a.m. until on or about 8:00 or 9:00 p.m. six days a week.

9.      From approximately July 2012 until on or about July 2013, Plaintiff worked at El Aguila from approximately 8:00 a.m. until on or about 8:00 or 9:00 p.m. five days a week and from approximately 7:00 p.m. until on or about 4:00 or 5:00 a.m. on Sundays.

10.     From approximately July 2013 until on or about December 2015, Plaintiff worked at El Aguila from approximately 8:00 a.m. until on or about 8:00 or 9:00 p.m. six days a week.

11.     From approximately December 2015 until on or about July 29, 2016, Plaintiff worked at El Aguila from 10:00 a.m. until on or about 7:00 or 8:00 p.m. five days a week and from approximately 10:00 a.m. until on or about 4:00 p.m. on Saturdays and at Las Banderas Sports Bar from approximately 4:15 p.m. until on or about 9:00 p.m. on Saturdays.

12.     From approximately August 20102 until on or about December 2015, Plaintiff was paid his wages in cash.

13.     From approximately December 2015 until on or about July 29, 2016 Plaintiff was paid his wages in a combination of check and cash.

14.     From approximately August 2010 until on or about July 2012, Plaintiff was paid a fixed salary of $60.00 per day.

15.     From approximately July 2012 until on or about July 2013, Plaintiff was paid a fixed salary of $65.00 per day and $80.00 for Sundays.

16.     From approximately December 2015 until on or about July 29, 2016, Plaintiff was paid $8.75 per hour for the first 30 hours by check, and $95 for the rest of the hours worked each week in cash.

17.     Plaintiff's wages did not vary regardless of how many hours he worked in a week.

18.     Plaintiff worked one to two hours past his scheduled departure time every night,

3

and the Defendants did not alter his pay to accommodate the extra time that he actually worked.

19.    Plaintiff was never required to sign in and out in any form at the start and end of his work shifts, nor was he aware of anyone else recording his work hours by any method.

20.    Furthermore, Defendants did not provide Plaintiff with a statement of wages with each payment of wages, as required by NYLL § 195(3).

**Plaintiff's Proposed Conclusions of Law**

1.    The court has subject matter jurisdiction of this action.  29 U.S.C. § 216(b), 28 U.S.C. § 1337 and 28 U.S.C. § 1331.

2.    The claims arising under New York law are so related to the FLSA claims that they form part of the same case or controversy, and are therefore within the supplemental jurisdiction of the court.  28 U.S.C. § 1367.

3.    Defendants are thus subject to the minimum and overtime wage requirements of the FLSA.  *See* 29 U.S.C. §§ 206, 207.

4.    Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013);  *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3); *see also Falk v. Brennan*, 414 U .S. 190, 195 (1973) (emphasizing "expansiveness" of the definition of employer under the FLSA).

11.    Defendants were employers of Plaintiff under the FLSA and NYLL.

12.    Defendants constitute an enterprise engaged in commerce or in the production of goods in commerce within the meaning of the FLSA because its employees handle and work on goods and materials that have been moved in and produced for commerce, and Defendant

4

Corporations had annual gross sales of $500,000 or more. In the years 2010 to 2016, Defendants had a gross volume of sales or business done exceeding $500,000.00 per year.

13.     Defendants are thus subject to the overtime wage requirements of the FLSA for the years 2010 through 2016.  *See* 29 U.S.C. § 207.

<u>Minimum Wage and Overtime Claims</u>

14.     Under both federal and New York state law, an employee must be paid a minimum wage.  29 U.S.C. §206; N.Y. Lab. Law §652.

15.     Under the FLSA, the minimum wage rate since July 24, 2009 has been $7.25 per hour.  29 U.S.C. §206(a)(1).

16.     Since July 24, 2009 the New York minimum wage rate has been the same as the FLSA rate, $7.25.  N.Y.L.L. §652.

17.     The New York minimum wage rate was the same as the federal rate until December 31, 2013, when the New York minimum wage rate increased to $8.00 per hour.  On December 31, 2014, when the New York minimum wage rate increased to $8.75 per hour.  On December 31, 2015, when the New York minimum wage rate increased to $9.00 per hour.  N.Y.L.L. §652(2); 12 N.Y.C.R.R. §146-1.2.

18.     Under both federal and New York state law, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek.  29 U.S.C. § 207(2)(C); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2013).

19.     Overtime pay under the FLSA is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).

20.     The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; 29 U.S.C. § 207(e).

21.     Where an employee receives a straight weekly salary, there is a rebuttable presumption that the salary covers 40 hours worked. Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS), 2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

20.     Further, under the New York Hospitality Industry Wage Order, an employee who is not paid on an hourly basis' regular rate is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR §146-3.5 (2013).

21.     In this matter, Plaintiff was not paid on an hourly basis. Instead, Plaintiff was paid at flat rates per week or by day that constituted a fixed salary that did not vary based on the hours he actually worked, in violation of the NY Hospitality Wage Order.

Records

22.     An employee-plaintiff under the FLSA bears the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The employee's burden "is not high," and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (internal citations omitted).

6

23.     Where an employer had failed to maintain accurate and complete records of the hours employees worked and the amounts they were paid, the plaintiff-employee need only to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp*., 121 F.3d 58, 66 (2d Cir. 1997).  The burden then shifts to the employer to come forward with any evidence to either show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to produce such evidence, the court may award damages to the employee, even though the result be only approximate. *Id.* at 688.   In the absence of rebuttal by defendants, the employees' recollections and estimates of hours worked are presumed to be correct.  *Amaya v. Superior Tile & Granite Corp*., 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Zhao v. East Harlem Laundromat, Inc*., 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS 121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).

24.     Under the FLSA, employers are required to "make, keep, and preserve" records of their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c).

25.     Employers are required to identify certain information in order for their records to be considered complete and accurate.   Employers are required to maintain records of the employees': name in full, home address, sex and occupation, time of day and day of the week in which employee's workweek begins, the employee's regular hourly rate, total hour worked each day and each week, total daily or weekly earnings, total premium pay for overtime hours, total of

additions or deductions, and the date of payment as well as the dates of the pay period covered by that payment. 29 C.F.R. § 516.2(a).

26.     Employers must keep payroll records for at least three years and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a)(1). Under the NYLL, employers must "establish, maintain, and preserve" detailed weekly payroll records for each employee "for not less than six years." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1; N.Y. Lab. Law § 195, 661.

27.     The employee records required under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1 should contain: (1) name and address; (2) social security number or other employee identification number; (3) occupational classification; (4) the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10; (5) regular and overtime hourly wage rates; (6) the amount of gross wages; (7) deductions from gross wages; (8) the amount of net wages; (9)  tip credits, if any, claimed as part of wages; (11) money paid in cash; and (12) student classification.

28.     At no time did Defendants maintain any records pertaining to the Plaintiff nor were any offered at trial by the Defendants or even alluded to at trial by the Defendants.

29.     In the light of Defendants' failure to maintain legislatively required records, Plaintiff's testimony must be presumed correct. *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Zhao v. East Harlem Laundromat, Inc*., 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS 121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).

<u>Willfulness, the Statute of Limitations, and Liquidated Damages</u>

30.     Under the FLSA, the statute of limitations applicable to claims for unpaid wages is two years, but is extended to three years if the violation is willful.  29 U.S.C. § 255(a).

31.     Under the FLSA a violation is considered willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp*., 586 F.3d 201, 207 (2d Cir 2009) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)).

32.     Defendants were aware of the requirements of the FLSA and NYLL, yet chose not to follow them.  Defendants knew, or willfully ignored, that the law did not permit employees to be paid at a rate below minimum wage if they were not properly notified of the tip credit.

33.     Defendants deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to timely take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law.  *Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) ("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotation marks omitted).

34.     As Plaintiff can establish that Defendants' violation of the FLSA was willful, the Plaintiff is entitled to a three-year limitations period under the FLSA, *i.e.*, starting from August 24, 2013, three years before the complaint was filed.  29 U.S.C. §255; *Decraene v. Neuhaus (U.S.A.), Inc.*, 2005 U.S. Dist. LEXIS 10836, at *23-*24 (S.D.N.Y. 2005).

35.     The statute of limitations for claims brought under the NYLL is six years.  N.Y. Lab. Law § 663(3).

36.     Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist.

LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).  Plaintiff may therefore recover unpaid minimum and overtime wages under New York state law for the period from and after August 24, 2010.

37.     Under the FLSA, once liability is established the employee is entitled to recover all unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425, *12, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) (quoting *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). The employer may escape liability for liquidated damages, if it can demonstrate that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132, 150 (2d Cir. 2008).  The employer must make establish its subject good faith and objective reasonableness by "plain and substantial evidence." *Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808, *74, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) (quoting *Moon v. Kwon*, 248 F.Supp.2d 201, 234 (S.D.N.Y. 2002).  "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *McLean*, 2012 U.S. Dist. LEXIS 55425, *13 (quoting *Herman*, 172 F.3d at 142).  "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* (quoting *Barfield*, 537 F.3d at 150.)

38.     As reviewed above, Defendants' actions were willful or at a minimum reckless; accordingly, liquidated damages apply.

39.     Under the NYLL, as under the FLSA, an employee is entitled to recover liquidated damages unless the employer can establish a good faith basis for having failed to pay the required wages.  N.Y. Lab. Law § 198(1-a); *Hart v. Rick's Cabaret*, 2013 U.S. Dist. LEXIS 129130, *88-89, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013).   Given the uncontroverted evidence of Defendants' willfulness and lack of good faith, Plaintiff is, by statute, entitled to liquidated damages under New York Labor Law.  NYLL § 663(1).

40.     Through April 8, 2011, liquidated damages on unpaid wages and spread of hours pay under the New York Minimum Wage law are computed at 25% of the unpaid wages.  The New York Labor Law was amended effective April 9, 2011, amending the recoverable amount of liquidated damages for unpaid wages to 100 percent; thus, from April 9, 2011 through the end of Plaintiff's employment, liquidated damages under the New York Labor Law are computed at 100% of the unpaid wages.  NYLL § 663(1).

41.     Courts in this Circuit are divided as to whether a plaintiff may recover liquidated damages under both the FLSA and NYLL.  However, "allowing recovery under both statutes appears to be the majority approach."  *Begum v. Ariba Disc., Inc*., 2015 U.S. Dist. LEXIS 5598, *5 (S.D.N.Y. Jan. 16, 2015) (quoting *Tackie v. Keff Enters. LLC*, No. 14cv2074 (JPO), 2014 U.S. Dist. LEXIS 130148, 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014)).  "This is because the Supreme Court has specified that liquidated damages under [the] FLSA are compensatory, but the Second Circuit has held that liquidated damages under the NYLL are punitive."  *Id.* (quoting *Tackie*, 2014 WL 4626229, at *5) (citations omitted).  "Therefore, the two types of liquidated damages are not functional equivalents, and a plaintiff may recover both."  *Id.* (quoting *Tackie*, 2014 WL 4626229, at *5).

42.     Some recent decisions have departed from the majority approach and have held that in light of the amendments to the NYLL which changed the standard for an award of liquidated damages to good faith rather than willfulness, and changed the amount of liquidated damages from 25% to 100%, the liquidated damages under the NYLL and FLSA now serve the same purpose, and "a cumulative award of liquidated damages would amount to an impermissible double recovery." *Hernandez v. JRPAC, Inc.*, Index No. 14-cv-4176 (PAE), 2016 U.S. Dist. LEXIS 75430, *111 (S.D.N.Y. June 9, 2016).  Plaintiffs maintain that this view is misguided.

43.     The view that the amendments to the NYLL represented a change in the purpose of the liquidated damages imposed by the statute is not supported by the legislative history of those amendments.  Magistrate Judge Francis recently and compellingly addressed this matter in detail:

> While amended NYLL now mirrors the FLSA in its treatment of liquidated damages, the foundation for the notion that the two statutes serve different purposes -- that is, that liquidated damages under NYLL are punitive, unlike their FLSA counterparts -- has not been shaken. Indeed, the Sponsors Memorandum in support of the 2010 amendments (which increased liquidated damages from 25% to 100%) justifies the modifications by observing that "[t]he <u>penalties</u> in place for employers paying less than minimum wage are minimal and offer little deterrent -- this will change dramatically with this legislation. <u>Penalties</u> for violating employee rights would be increased in order to far better protect workers' rights and interests." N.Y. Spons. Memo., 2010 S.B. 8380, Leg. 233, Reg. Sess. (Oct. 28, 2010) (emphasis added). And, although amendments effective in 2009 removed the requirement that a plaintiff prove that violations were "willful" in order to merit liquidated damages, instead providing the employer an opportunity to "prove[] a good faith basis to believe that its underpayment of wages was in compliance with the law," NYLL §§ 198(1-a), 663(1), the Sponsors Memorandum in support of those amendments says nothing about altering the punitive purpose of the liquidated damages provision; rather, it asserts that the amendment aims to remedy "the inherent unfairness of requiring employees who have already proven they were underpaid to further prove the underpayment was willful. The burden of explaining the basis of violations rightly rests with the employer, rather than imposing the onerous burden on employees of establishing their employer's state

> of mind." N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess.
> (April 8, 2009). This indicates that the 2009 amendments merely
> shifted the burden of proving liquidated damages, not their purpose.

*Castillo v. RV Transp., Inc.*, 15-cv-0527 (LGS) (JCF), 2015 U.S. Dist. LEXIS 170996, *18-*20

(S.D.N.Y. Dec. 21, 2015), *report and recommendation adopted in part, rejected in part*, 2016 U.S.

Dist. LEXIS 48503 (rejecting recommendation to award liquidated damages under both statutes).

This examination of the legislative history of the amendments to the NYLL confirms that the

amendments were intended to increase the penalties for employers who deny legal wages to

employees, and to shift the burden of proving liquidated damages to the employer, without

changing the purpose of the liquidated damages.

44.     Moreover, inferring a change in the purpose of NYLL liquidated damages from the

shift in the burden and the increase in the award results in amendments which were intended to

impose a greater deterrent and penalty on employers in fact providing less of a deterrent and

penalty.  The 2009 amendment of the burden to obtain liquidated damages, shifting the burden

from the employee proving willfulness to the employer proving good faith, was part of a group of

amendments with the purpose of "expand[ing] worker protections and remedies against employers

who violate Labor Law requirements related to wage payment."  New York State Assembly

Memorandum in Support of Legislation, *reprinted in* N.Y. Bill Jacket 2009, ch. 372, at 5.  The

amendments were strongly supported by groups that advocate and represent low-wage workers,

because the amendments would strengthen protections for such workers.  Letters in Support by

National Employment Law Project and The Legal Aid Society, *reprinted in* N.Y. Bill Jacket 2009,

ch. 372, at 20-22.  The 2010 amendment increasing New York's liquidated damages from 25% to

100% had a similar purpose, and similar supporters.  New York State Senate Introducer's

Memorandum in Support, *reprinted in* N.Y. Bill Jacket 2010, ch. 594, at 5, 9-10, 17-20, 33-34, 56-

57, 75-76, 82-83, 105, 117-118.

45.     Both amendments had the purpose of expanding remedies for employees, and deterring and penalizing employers for labor law violations.  It would be contrary to the purposes of the amendments to read the burden-shifting and increased liquidated damages as an indication that NYLL liquidated damages were intended to serve the same purpose as the FLSA liquidated damages, such that a plaintiff could only recover under one provision.  This would significantly reduce, rather than increase, the remedies for the many employees who bring claims under both the FLSA and NYLL.  Absent any clear indication from the text of the amendments to the NYLL or the legislative history of those amendments, it is improper to read a change in the purpose of liquidated damages under the NYLL from punitive to compensatory.

46.     Moreover, the notion that NYLL liquidated damages are compensatory is debunked by the awarding of prejudgment interest in addition to liquidated damages under the NYLL.  The NYLL expressly provides for award of both prejudgment interest and liquidated damages. N.Y.L.L. § 198(1-a).  Courts have long held that prejudgment interest is compensatory under the NYLL, and that as a result prejudgment interest under the NYLL cannot be recovered together with liquidated damages under the FLSA, which are compensatory.  *See Hernandez*, 2016 U.S. Dist. LEXIS 75430, at *113 (prejudgment interest is compensatory for defendant's interest-free use of money owed to plaintiff, and because FLSA liquidated damages are also compensatory, prejudgment interest cannot be awarded together with FLSA liquidated damages); *see also Asfaw v. BBQ Chicken Don Alex No. 1 Corp.*, Index No. 14-cv-5665 (CBA), 2016 U.S. Dist. LEXIS 42298, *10 n.2 (E.D.N.Y. Mar. 30, 2016) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)).  Because the NYLL provides for awards of both compensatory prejudgment interest, and liquidated damages, the fair conclusion is that liquidated damages under the NYLL are punitive, not compensatory.

47.     Moreover, legislators are presumably aware of existing judicial interpretations.  *See Schmidt v. Falls Dodge, Inc.*, 19 N.Y.3d 178, 184 (N.Y. 2012) (Ciparick, J., dissenting) (observing that "the legislative history of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with" and that settled interpretations become "as much a part of the enactment as if incorporated into the language of the act itself" (quoting *Matter of Knight-Ridder Broad., Inc. v. Greenberg*, 511 N.E.2d 1116, 1119 (N.Y. 1987)).  The Court should presume that the New York legislature was aware before amending the NYLL liquidated damages provisions that the prevailing interpretation was that employees could recover FLSA and NYLL liquidated damages simultaneously.  There is no indication that the NYLL amendments were intended to change this.  The Court should presume that the New York legislature did not intend to change prevailing law and take away a plaintiff's ability to recover liquidated damages under the NYLL and FLSA simultaneously when it amended the NYLL liquidated damages to shift the burden of obtaining liquidated damages and increase New York's liquidated damages.

48.     Plaintiff notes the Second Circuit issues a summary order in the matter of *Chowdhury v. Hamza Express Food Corp*, et al., No 15-3142 (2d Cir. Dec. 7, 2016), which declined to award plaintiffs liquidated damages under both the FLSA and NYLL. We believe this decision is misguided for the reasons raised above. Moreover, summary orders have no precedental effect, and accordingly the Court is not bound by this decision. 2d Cir. R. 32.1.1.(a).

49.     Under New York law, the Court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay.  *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *27 ("courts typically award prejudgment interest on damages for NYLL violations"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan*

15

*Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (Sup. Ct. N.Y. C'ty 1997).  This is because under New York (and federal) law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money.  *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group,* 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000).

50.     In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages.  This is because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages.  *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

51.     The New York prejudgment interest rate applies.  *McLean*, 2012 U.S. Dist. LEXIS 55425 at *28.  Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest.  *Id.*  As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date.  *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *28 ("prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date").  Thus, prejudgment interest on Plaintiff's back pay awards should be computed from the median of each relevant period to the date of judgment.

Spread of Hours Claims

52.     Separate from any other regular or overtime wages, when an employee works more than 10 hours on any given day, the employee is entitled to receive "spread of hours" pay, which is an additional one-hour's pay at the applicable minimum wage rate.  12 NYCRR § 142-2.4(a) (2009).

53.     Plaintiff worked over 10 hours per day several days per week. Accordingly, Plaintiff was improperly denied spread of hours wages. 12 NYCRR § 142-2.4(a) (2009).

Wage Notice and Wage Statements Under the NYLL

54.     Under the NYLL, employers must provide employees with wage and hour notices. NYLL § 195(1)(a).

55.     Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.  Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment.  *Id.*  The New York Labor Law, since April 9, 2011, has required employers to provide employees at the time of hiring, and before February 1 in each subsequent calendar year through 2014, a written notice containing the following information: the rate or rates of pay and basis thereof,  whether paid  by  the  hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the  regular  pay  day designated  by  the  employer;  the  name  of  the  employer;  any  "doing business as" names used  by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if  different; the telephone number of the employer.  The notice must  be provided in English and in the language identified by the employee as his primary language.

17

56.     The employer has the burden of proving compliance with the notification requirements of §195(1)(a).

57.     There is no evidence that Defendants ever provided any NYLL compliant wage and hour notices to Plaintiff and Defendants stipulated that they did not provide such notices at trial.

58.     Plaintiff is entitled to damages of $50 per week of violation, up to a maximum of $5,000. NYLL §198(1-b).

59.     The NYLL also requires employers to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage." NYLL § 195(3). The wage statement must list the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

60.     An employee who does not receive such statements can recover $100 per week of violation, up to a maximum of $5,000. NYLL §198(1-d).

61.     There is no evidence in the record that Plaintiff ever received any document satisfying the requirements of NYLL §195(3).

62.     Plaintiff is entitled to statutory damages of $100 per week, up to a maximum of $5,000. NYLL §198(1-d).

<u>Attorneys' Fees</u>

63.    The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").  Accordingly, Plaintiffs should be awarded attorneys' fees and costs in an amount to be determined after trial.

64.    The judgment against Defendants should provide that if any amounts remain unpaid ninety days after issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the judgment shall automatically increase by fifteen percent.  NYLL §198(4).

Dated:  New York, New York
        January 4, 2018

                         /s/ Sara Isaacson
                        Sara Isaacson, Esq.
                        MICHAEL FAILLACE & ASSOCIATES, P.C.
                        60 East 42nd Street, Suite 4510
                        New York, NY 10017
                        (212) 317-1200
                        sisaacson@faillacelaw.com
                        *Attorneys for Plaintiff*