**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
FLORENCIO MENDOZA JAVA, *individually and on*
*behalf of others similarly situated,*

     *Plaintiff,*       **16-cv-6691-AT-JLC**

    -against-

EL AGUILA BAR RESTAURANT CORP. (d/b/a EL
AGUILA), LAS BANDERAS SPORTS BAR
CATERING LOUNG CORP. (d/b/a LAS
BANDERAS SPORTS BAR), SANTIAGO
ALMONTE, and JUAN ALMONTE,

     *Defendants*.
-----------------------------------------------------------------X

## PLAINTIFF'S POST-TRIAL MEMORANDUM OF LAW

MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT................................................................................................1

PROPOSED FACTUAL FINDINGS ......................................................................................1

    A.  The Parties ...........................................................................................................1

    B.  Plaintiff's Hours Worked......................................................................................2

    C.  Plaintiff's Pay......................................................................................................5

CONCLUSIONS OF LAW ......................................................................................................7

    A.  Plaintiff is Entitled to Unpaid Minimum Wages and Overtime Wages........................7

    B.  Records ................................................................................................................8

    C.  Willfulness, the Statute of Limitations, and Liquidated Damages ...........................10

    D.  Spread of Hours Claims......................................................................................14

    E.  Wage Notice and Wage Statements Under the NYLL ................................................15

    F.  Attorneys' Fees..................................................................................................16

    G.  Plaintiff's Damages Calculations......................................................................17

    CONCLUSION ..........................................................................................................18

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Amaya v. Superior Tile & Granite Corp.*,
    2012 U.S. Dist. LEXIS 5246 (S.D.N.Y. Jan. 17, 2012) .................................................9, 10

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)..............................................................................................................8, 9

*Barfield v. New York City Health and Hospitals Corp.*,
    537 F.3d 132 (2d Cir. 2008)..................................................................................................12

*Berrios v. Nicholas Zito Racing Stable, Inc.*,
    849 F.Supp.2d 372 (E.D.N.Y. 2012) .....................................................................................8

*Chowdhury v. Hamza Express Food Corp.*,
    666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016) ..........................................................................13

*Decraene v. Neuhaus (U.S.A.), Inc.*,
    2005 U.S. Dist. LEXIS 10836 (S.D.N.Y. 2005)..................................................................11

*Doo Nam Yang v. ACBL Corp.*,
    427 F. Supp. 2d 327 (S.D.N.Y. 2005)..................................................................................11

*Giles v. City of New York*,
    41 F.Supp.2d 308 (S.D.N.Y. 1999).......................................................................................8

*Guallpa v. NY Pro Signs Inc.*,
    Index No. 11-cv-3133(LGS),
    2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014) ....................................................8

*Hart v. Rick's Cabaret*,
    2013 U.S. Dist. LEXIS 129130 (S.D.N.Y. Sept. 10, 2013)................................................12

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011)..................................................................................................8

*McLean v. Garage Mgmt. Corp.*,
    2012 U.S. Dist. LEXIS 55425 (S.D.N.Y. April 19, 2012) ........................... 11, 12, 13, 14

*Merino v. Beverage Plus Am. Corp.*,
    2012 U.S. Dist. LEXIS 140679  (S.D.N.Y. Sept. 25, 2012)............................................. 13

*Moon v. Kwon*,
    248 F.Supp.2d 201 (S.D.N.Y. 2002).................................................................................. 8

ii

*Ortega v. JR Primos 2 Rest. Corp.*,
  2017 U.S. Dist. LEXIS 93178 (S.D.N.Y. June 16, 2017) .................................................13

*Reich v. S. New England Telecomms. Corp.*,
  121 F.3d 58 (2d Cir. 1997)..........................................................................................9

*Solis v. Cindy's Total Care, Inc.*,
  2012 U.S. Dist. LEXIS 1808 (S.D.N.Y. Jan. 5, 2012)  ....................................................12

*Young v. Cooper Cameron Corp.*,
  586 F.3d 201  (2d Cir 2009)........................................................................................11

*Zhao v. East Harlem Laundromat, Inc.*,
  2010 U.S. Dist. LEXIS 121335 (S.D.N.Y. Oct. 8, 2010),
  *adopted in part by* 2010 U.S. Dist. LEXIS 121328(S.D.N.Y. Nov. 12, 2010) .............9, 10

**<u>Statutes and Regulations</u>**

12 N.Y.C.R.R. § 146 ..................................................................................................7, 10, 15

29 C.F.R. § 516 .........................................................................................................9, 10

29 C.F.R. § 778 ...........................................................................................................7, 9

29 U.S.C. § 206 ............................................................................................................7

29 U.S.C. § 207 ..........................................................................................................7, 9

29 U.S.C. § 211 ............................................................................................................9

29 U.S.C. § 216 ...........................................................................................................11

29 U.S.C. § 255 ........................................................................................................10, 11

N.Y. Lab. Law § 195 ..............................................................................................10, 15, 16

N.Y. Lab. Law § 198 ...........................................................................................12, 14, 15, 16

N.Y. Lab. Law § 652 ......................................................................................................7

N.Y. Lab. Law § 661 .....................................................................................................10

N.Y. Lab. Law § 663 ...........................................................................................11, 13, 14, 16

N.Y. C.P.L.R. § 5001.............................................................................................................................14

N.Y. C.P.L.R. § 5004.............................................................................................................................14

Plaintiff Florencio Mendoza Java ("Plaintiff"), by his attorneys Michael Faillace & Associates, P.C., respectfully submits this post-trial memorandum of law, pursuant to the Court's direction at trial on March 1, 2018.

## PRELIMINARY STATEMENT

The evidence at trial proved that Defendants failed to pay Plaintiff the minimum wage, overtime and spread of hours pay, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff also testified that he did not receive employment documents from Defendants that complied with NYLL § 195. The evidence also demonstrated that Defendants did not preserve any time or pay records for Plaintiff. The wages Plaintiff received from Defendants wildly undercompensated him for the minimum wage, overtime, and spread-of-hours pay required by federal and state law. Specifically, Plaintiff worked 61 to 72 hours during his employment with Defendants and was paid a fixed daily salary that did not vary based on the number of hours he worked each day.

The Defendants tell a different, and unconvincing story. They assert that Plaintiff never worked more than forty hours per week. However, Defendants and their witnesses' testimony about the hours and number of days that Plaintiff worked each week was repeatedly proven incredible. Indeed, Defendants and their witnesses never personally observed the hours and number of days that Plaintiff worked each week, nor did Defendants have any time-keeping mechanism to keep track of the number of hours Plaintiff worked each week. For the reasons set forth below, Plaintiff should have judgment against Defendants.

## PROPOSED FACTUAL FINDINGS

Plaintiff proved the following facts at trial by a preponderance of the credible evidence.

A. <u>The Parties</u>

1

The Defendants operated two bar/restaurants known as El Aguila and Las Banderas Sports Bar. (Tr. 7:21-24; 8:10-17; 11:9-12; 90:7-17; 112:3-5; 102:15-17). At all relevant times, the individual defendant Juan Almonte: (1) determined employees' compensation, (2) determined employees' work hours and schedules, (3) calculated employees' time worked, (4) paid employees, (5) hired and fired employees, (6) managed and supervised employees. (Stipulated Fact 5; Tr. 11:1-8; 76:8-25; 134:19-135:4).   Juan Almonte was the owner of El Aguila Restaurant Corp. at all relevant times. (Tr. 112:3-8).  At all times relevant to this action, El Aguila Bar Restaurant Corp. had a gross volume of sale and business of over $500,000 per year and engaged in interstate commerce within the meaning of the FLSA because its employees handle and worked with goods and materials that have moved in, and been produced for, interstate commerce. (Stipulated Facts 6 & 7).

Plaintiff was employed at El Aguila from 2008 until July 29, 2016, and at Las Banderas from December 2015 until July 2016.  (Tr. 8:4-15; 8:25-9:1-6).  Plaintiff was employed by Defendants at El Aguila as a delivery worker, cook, and a cleaner.  (Tr. 8:8-9).  Plaintiff was employed by Defendants at Las Banderas Sports Bar to clean and receive deliveries. (Tr. 8:20-21).  Plaintiff regularly spent more than twenty percent of his work time performing non-delivery duties.  (Tr. 18:14-18; 19: 13-18).   In fact, from 2008 until July 2016, Plaintiff made approximately 20 deliveries per week, and each delivery took him about ten to fifteen minutes to make. (Tr. 18:14-18; 19:13-18).  Moreover, Plaintiff was never told that any tips he received were supposed to offset to his wages and nobody ever explained to Plaintiff about the tipped-credit. (Tr. 18:19-21; 19:3-5).

B. Plaintiff's Hours Worked

2

From August 2010 until July 2012, Plaintiff worked six days per week at El Aguila, and would regularly start his work day at 8:00 a.m., and finish his work day at 8:00 p.m. (Tr. 11:21-12:8). From July 2012 until July 2013, Plaintiff would regularly work six days per week at El Aguila, five of which he worked during the day, and one of which he worked at night. (Tr. 12:5-8, 15-17). Specifically, from July 2012 until July 2013, when Plaintiff worked during the day, he would regularly start his day at 8:00 a.m., and finish his work day at 8:00 p.m. (Tr. 12:9-11). From July 2012 until July 2013, when Plaintiff worked one day per week at night, he would regularly arrive at work at 7:00 p.m., and finish his work day at 5:00 a.m. (Tr. 12:12-14). From July 2013 until December 2015, Plaintiff worked six days per week at El Aguila, and would regularly start his work day at 8:00 a.m., and finish his work day at 8:00 p.m. (Tr. 12:15-13:9). From December 2015 until the end of his employment, Plaintiff worked six days per week. (Tr. 13:7-12). Specifically, from December 2015 until the end of his employment, Plaintiff worked five days per week at El Aguila from 10:00 a.m. until 8:00 p.m., and one day per week at El Aguila from 10:00 a.m. until 4:00 p.m. at El Aguila, and then from 4:00 p.m. until 9:00 p.m. at Las Banderas. (Tr. 13:7-17).

Throughout his employment with Defendants, Plaintiff's start and end times, and the number of days he worked each week, were never recorded. (Tr. 13:18-14:19). Defendant Juan Almonte testified as to the number of hours and days that Plaintiff worked throughout his employment. (Tr. 120:8-9; 122:5-7; 124:5-22). Yet, Mr. Juan Almonte did not have personal knowledge of the hours that Plaintiff worked because Juan Almonte was not present at the restaurants to verify the hours and days that Plaintiff worked. (Tr. 114:16; 117:9-12; 136:9-13). Instead, Mr. Juan Almonte's knowledge of the number of hours and days that Plaintiff worked was based on what his managers told him. (Tr. 117:19-118:2; 123:14-17; 136:17-19). Yet,

Santiago Almonte, the general manager of El Aguila and the individual who was in charge of Las Banderas, who reported the number of hours Plaintiff worked to Juan Almonte, also did not have personal knowledge of the number of hours and days that Plaintiff worked throughout his employment. (Tr. 11:11-12; 89:1-5; 95:16-20; 96:2-7).  Indeed, Santiago Almonte testified that Plaintiff worked at El Aguila five days per week from 2010 to 2016, but Santiago Almonte was only present at El Aguila and only observed Plaintiff at El Aguila three to four times a week. (Tr. 92:11-16; 93:15-19; 96:11-15; 103:13-20).  Moreover, Santiago Almonte stated that he kept track of Plaintiff's hours by knowing what Plaintiff's regular schedule was and by virtue of the fact that he did not receive any complaints from the manager. (Tr. 96:2-7; 103:23-104:1). Santiago Almonte testified that throughout Plaintiff's employment, Santiago Almonte rarely observed what time Plaintiff arrived at work in the morning. (Tr. 105:19-22; 106:3-6).  Mr. Santiago Almonte further testified that he was rarely at El Aguila during the day and he would only come to El Aguila three to four times per week in order to attend certain meetings and then he would leave.  (Tr. 96:11-15; 103:13-14).

Defendants' witness, Pedro Pichardo, the day manager of El Aguila from 2008 to 2014, did not testify as to the number of days Plaintiff worked each week throughout his employment at El Aguila.  (Tr.75:4-12).  Pedro Pichardo testified that from 2008 to 2014, he never observed what time Plaintiff came into work each day because Mr. Pichardo always came in after him. (Tr. 80:20-22).  Pedro Pichardo's testimony was inconsistent because he testified that he left work each day at 5:00 p.m., but would observe Plaintiff at the bar at El Aguila sometimes at 6:00 p.m., 7:00 p.m. or 8:00 p.m. (Tr. 65:25-66:1-5; 81:1-13).

Pedro Pichardo's testimony that between 2010 to 2014 Plaintiff would be missing for about an hour three times a week, and that he sent home Plaintiff between fifteen to twenty-five

times for being drunk during that time is also incredible. (Tr. 64:8-17; 84:18-22; 70:18-71:4). Indeed, there are no records of any of these suspensions and Plaintiff was never fired for any of this alleged behavior. (Tr. 64:18-21; 85:13-87-2; 133:2-16; 138:21-139). Additionally, Plaintiff was given an award for his professionalism in December 2014 and Defendants even sent Plaintiff to work at another one of their restaurants, Las Banderas, in December 2015. (Tr. 8:14-15; 10:4-7; 98:14-23; 99:7-12; 139:4-10).

Moreover, Defendants and their witnesses all had vastly different accounts of when and if El Aguila kept track of the number of hours that their employees' worked. Mr. Juan Almonte testified that all employees of El Aguila were required to sign in and out and that in fact all employees except for Plaintiff would sign. (Tr. 113:22-114:13). Mr. Juan Almonte stated that these records that were kept at El Aguila were stolen or damaged or got wet. (Tr. 114:21-24). He stated that the records that were destroyed or missing were from 2012. (Tr. 115:25-116:3). Juan Almonte further stated that there were records from the year 2010 and "[t]hey were lost. They had disappeared." (Tr. 116:19-21). Mr. Juan Almonte further testified that he was not the individual who was in charge of whether Plaintiff signed in and out because he was "almost never there." (Tr. 114:14-18). Yet, Mr. Pedro Pichardo, the day manager and the person who was at El Aguila five days per week from 9:00 a.m. until 5:00 p.m., had a vastly different account of the existence of any records at El Aguila between 2010 to 2014. Mr. Pichardo, who worked at El Aguila from 2008 until 2014 testified that from 2010 to 2014, there was no method or system implemented at El Aguila to record the number of hours employees worked and that employees did not sign any type of book when they arrived at work. (Tr. 71:14-20; 81:18-82:7). Mr. Santiago Almonte also testified that there were no records until 2015. (Tr. 105:3-16).

   C. Plaintiff's Pay

5

Plaintiff was paid a fixed salary that did not vary based on the number of hours he worked each day and week. (Tr. 15:9-18:5; 118:3-13).  From August 2010 until December 2015, Defendants paid Plaintiff in cash. (Tr. 15:15-16; 15:22-24; 16:21-23).  From December 2015 until July 2016, Defendants paid Plaintiff by check and cash. (Tr. 17:12-14).  The total pay Plaintiff received each week was not recorded by Defendants. (Tr. 18:8-10; 115:18-24) From August 2010 until July 2012, Defendants paid Plaintiff a fixed daily salary of $60. (Tr. 15:11-19).  From July 2012 until July 2013, Defendants paid Plaintiff a fixed daily salary of $65 for the five days per week that he worked during the day, and $80 per day for the one night per week that he worked at night. (Tr. 15:18-21; 15:25-17:2).  From July 2013 until December 2015, Defendants paid Plaintiff a fixed daily salary of $65. (Tr. 17:3-6; 17:10-11).  From December 2015 until the end of his employment, Plaintiff was paid $8.75 per hour for the first thirty hours that he worked each week by check, and then $95 in cash. (Tr. 17:12-14; 18:2-4).

Additionally, Defendants never provided Plaintiff with a statement of wages, or any other document or statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Tr. 19:6-12)  Defendants also did not give any notice to Plaintiff, in English and in Spanish (Plaintiff's primary language) of his rate of pay, employer's regular pay day, and other information.  (Tr. 19:21-20:7).

At trial, Defendants did not assert that they paid Plaintiff at an hourly rate.  However, Defendants had vastly different accounts as to how Plaintiff was paid. Mr. Juan Almonte testified that he paid Plaintiff a fixed weekly salary throughout his employment, while Mr. Santiago Almonte testified that Plaintiff was paid a fixed daily salary throughout his employment.  (Tr. 108: 3-15; 121:6-13; 122:24-123:1; 125:5-6; 135: 11-24).  Defendants admit that they never gave Plaintiff a wage notice, and they admit that they did not give Plaintiff a wage statement until

6

from 2010 to 2015; but they do allege they gave Plaintiff a wage statement starting in 2015. (Tr. 109:7-25; 138:9-20).

## <u>CONLUSIONS OF LAW</u>

Based on the facts adduced at trial and described above, Plaintiff submits that the court should make the following conclusions of law and damages awards.

A. <u>Plaintiff is Entitled to Unpaid Minimum Wages and Overtime Wages</u>

Defendants did not pay Plaintiff overtime wages throughout his employment, even though Plaintiff regularly worked 61 to 72 hours per week.  Plaintiff is entitled to recover damages as set forth herein.

Under both federal and New York state law, an employee must be paid the minimum wage. 29 U.S.C. § 206; N.Y. Lab. Law § 652. Under the Fair Labor Standards Act ("FLSA"), the minimum wage rate at all times applicable to this action has been $7.25 per hour. 29 U.S.C. § 206(a)(1).  As of July 24, 2009, the minimum wage rate under New York law for employees not eligible to be paid at the tipped minimum wage rate was $7.25 per hour.  The New York minimum wage increased to $8.00 per hour as of December 31, 2013; it further increased to $8.75 per hour as of December 31, 2014; and it further increased to $9.00 per hour as of December 31, 2015. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.

Under both the FLSA and NYLL, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of forty hours in a given workweek. 29 U.S.C. § 207(2)(C); 12 N.Y.C.R.R. § 146-1.4.  Overtime pay under the FLSA and NYLL is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107; 12 N.Y.C.R.R. § 146-1.4.

The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; 20 U.S.C. § 207(e).  Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that the salary covers 40 hours worked.  Therefore, to determine the regular rate, the weekly salary is divided by 40 hours.  *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS), 2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

Further, under the New York Hospitality Industry Wage Order the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 NYCRR § 146-3.5.

Here, Plaintiff was paid a fixed daily wage, and therefore, his regular rates of pay are calculated by dividing his weekly pay by 40 hours.

B. Records

An employee-plaintiff under the FLSA bears the burden of proving that she performed work for which she was not properly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  The employee's burden "is not high," and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (internal citations omitted).

8

Where an employer had failed to maintain accurate and complete records of the hours employees worked and the amounts they were paid, the plaintiff-employee need only to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997). The burden then shifts to the employer to come forward with any evidence to either show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to produce such evidence, the court may award damages to the employee, even though the result be only approximate. *Id.* at 688. In the absence of rebuttal by defendants, the employees' recollections and estimates of hours worked are presumed to be correct. *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Zhao v. East Harlem Laundromat, Inc*., 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS 121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).

Under the FLSA, employers are required to "make, keep, and preserve" records of their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Employers are required to identify certain information in order for their records to be considered complete and accurate. Employers are required to maintain records of the employees': name in full, home address, sex and occupation, time of day and day of the week in which employee's workweek begins, the employee's regular hourly rate, total hour worked each day and each week, total daily or weekly earnings, total premium pay for overtime hours, total of additions or deductions, and the date of payment as well as the dates of the pay period covered by that payment. 29 C.F.R. § 516.2 (a). Employers must keep payroll records for at least three

years and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a)(1). Under the NYLL, employers must "establish, maintain, and preserve" detailed weekly payroll records for each employee "for not less than six years." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1; N.Y. Lab. Law §§ 195, 661.

The employee records required under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1 should contain: (1) name and address; (2) social security number or other employee identification number; (3) occupational classification; (4) the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10; (5) regular and overtime hourly wage rates; (6) the amount of gross wages; (7) deductions from gross wages; (8) the amount of net wages; (9)  tip credits, if any, claimed as part of wages; (11) money paid in cash; and (12) student classification.

At no time did any Defendants use a punch card or a time tracking device to record when employees arrived and left.  Defendants claim to have maintained some records of their employees.  However, they have vastly different accounts of when and if those records existed and Defendants claim they did not have time records relating to Plaintiff.

In the light of Defendants' failure to maintain legislatively required records, Plaintiff's testimony must be presumed correct. *Amaya*, 2012 U.S. Dist. LEXIS 5246, at *19; *Zhao*, 2010 U.S. Dist. LEXIS 121335, at *15.  Additionally, the Plaintiff's accounts of his time worked is far more persuasive than Defendants.   Accordingly, the Court should adopt the Plaintiff's recollection of his hours worked and payment received.

C.  <u>Willfulness, the Statute of Limitations, and Liquidated Damages</u>

Under the FLSA, the statute of limitations applicable to claims for unpaid wages is two years, but is extended to three years if the violation is willful.  29 U.S.C. § 255(a).  Under the

FLSA a violation is considered willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp*., 586 F.3d 201, 207 (2d Cir 2009) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)).

Defendants were aware of the requirements of the FLSA and NYLL, yet chose not to follow them.  Defendants knew, or willfully ignored, that the law did not permit employees to be paid at a rate below minimum wage if they were not properly notified of the tip credit. Defendants' deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to timely take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) ("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotation marks omitted).

As Plaintiff can establish that Defendants' violation of the FLSA was willful, the Plaintiff is entitled to a three-year limitations period under the FLSA, *i.e.*, starting from August 24, 2016, three years before the complaint was filed.  29 U.S.C. § 255; *Decraene v. Neuhaus (U.S.A.), Inc.*, 2005 U.S. Dist. LEXIS 10836, at *23-4 (S.D.N.Y. 2005).  The statute of limitations for claims brought under the NYLL is six years.  N.Y. Lab. Law § 663(3).

Under the FLSA, once liability is established the employee is entitled to recover all unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS

55425, *12, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) (quoting *Herman v. RSR Sec. Services Ltd*., 172 F.3d 132, 142 (2d Cir. 1999)). The employer may escape liability for liquidated damages, if it can demonstrate that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132, 150 (2d Cir. 2008). The employer must make and establish its subjective good faith and objective reasonableness by "plain and substantial evidence." *Solis v. Cindy's Total Care, Inc*., 2012 U.S. Dist. LEXIS 1808, *74, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) (quoting *Moon v. Kwon*, 248 F.Supp.2d 201, 234 (S.D.N.Y. 2002). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *McLean*, 2012 U.S. Dist. LEXIS 55425, *13 (quoting *Herman*, 172 F.3d at 142). "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* (quoting *Barfield*, 537 F.3d at 150).

As reviewed above, Defendants' action were willful or at a minimum reckless; accordingly, liquidated damages apply.

Under the NYLL, as under the FLSA, an employee is entitled to recover liquidated damages unless the employer can establish a good faith basis for having failed to pay the required wages. N.Y. Lab. Law § 198(1-a); *Hart v. Rick's Cabaret*, 2013 U.S. Dist. LEXIS 129130, *88-89, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013). "Prior to November 24, 2009, plaintiffs were entitled to recover liquidated damages under the NYLL equal to 25% of unpaid wages if plaintiff could prove that employers' NYLL violation were 'willful." *McLean*, 2012 U.S. Dist. LEXIS 55425, at *21. The pre-amendment willfulness standard is the same as the

FLSA's willfulness standard. *Id.* ("the NYLL willfulness' standard under the pre-amendment provision 'does not appreciably differ from the FLSA's willfulness standard.") (quoting *Kuebel v. Black & Decker Inc.*, 643 F. 3d 352, 366 (2d Cir. 2011)).  Since April 9, 2011, the amount of liquidated damages for unpaid wages under the New York Labor Law is 100%. N.Y. Lab. Law. § 198(1-a).  Given the uncontroverted evidence of Defendants' willfulness and lack of good faith, Plaintiff is, by statute, entitled to liquidated damages under New York Labor Law.  NYLL § 663(1).

Plaintiffs maintain that liquidated damages under the FLSA and NYLL serve different purposes, and therefore liquidated damages can be awarded under both statutes.  *See, e.g.*, *Merino v. Beverage Plus Am. Corp.*, 2012 U.S. Dist. LEXIS 140679 at *7-*8 (S.D.N.Y. Sept. 25, 2012)("Most courts in this Circuit hold that a plaintiff may recover both forms of liquidated damages because the FLSA's damages are meant to be compensatory, while the state damages are meant to be punitive;" following majority of courts and awarding recovery of liquidated damages under both FLSA and NYLL);  *McLean*, 2012 U.S. Dist. LEXIS 55425 at *25-*26 ("FLSA liquidated damages and NYLL liquidated damages serve fundamentally different purposes, and the plaintiffs are entitled to both FLSA and NYLL liquidated damages for unpaid wage").  Nevertheless, Plaintiffs are aware of the decision in *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016), which held that a plaintiff may recover liquidated damages under only one of the FLSA or NYLL for the same violation.   While *Chowdhury* is a non-precedential summary order, Plaintiffs recognize that "a district court is ill advised 'to flout germane guidance of a Circuit Court panel and to substitute its own conclusion of law.'"  *Ortega v. JR Primos 2 Rest. Corp.,* 2017 U.S. Dist. LEXIS 93178, *13 (S.D.N.Y. June 16, 2017) (quoting *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010)).

Accordingly, Plaintiff presents his calculations with liquidated damages awarded under only one statute, but expressly preserve their request for liquidated damages under both statutes.

Under the NYLL, the Court must award prejudgment interest in addition to liquidated damages.  NYLL §§ 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee . . .  in which the employee prevails, the court shall allow such employee to recover . . . prejudgment interest as required under the civil practice law and rules, and . . . an additional amount as liquidated damages . . ."); 663(1) (same).

The New York prejudgment interest rate applies.  *McLean*, 2012 U.S. Dist. LEXIS 55425 at *28.  Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest.  *Id.*  As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date.  *See  McLean*, 2012 U.S. Dist. LEXIS 55425 at *28 ("prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date").  Thus, prejudgment interest on Plaintiff's back pay awards should be computed from the median of each relevant period to the date of judgment.

D.  Spread of Hours Claims

Separate from any other regular or overtime wages, when an employee works more than 10 hours on any given day, the employee is entitled to receive "spread of hours" pay, which is an additional one-hour's pay at the applicable minimum wage rate.  12 NYCRR § 142-2.4(a) (2009).  Plaintiff testified he worked over 10 hours per day regularly during his employment.

(Tr. 11:21-24; 12:9-11; 12:24-13:3; 13:15-17).   There is no evidence in the record suggesting Defendants properly paid an additional hour's pay for these days.  Accordingly, Plaintiff was improperly denied spread of hours wages. 12 NYCRR § 146-1.6

 E. <u>Wage Notice and Wage Statements Under the NYLL</u>

  Under the NYLL, employers must provide employees with wage and hour notices. NYLL § 195(1)(a).  Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.  Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment.  *Id.* An employee who does not receive such notices can recover damages of $50 per day, up to a statutory maximum of $5,000.  NYLL § 198(1-b).  The New York Labor Law, since April 9, 2011, has required employers to provide employees at the time of hiring, and before February 1 in each subsequent calendar year through 2014, a written notice containing the following information: the rate or rates of pay and basis thereof,  whether  paid  by  the  hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the  regular  pay  day designated  by  the employer;  the  name  of  the  employer;  any  "doing business as"  names  used  by  the employer; the physical address of the employer's main office or principal place of  business,  and a  mailing  address  if  different;  the  telephone number of the employer.  The notice must be provided in English and in the language identified by the employee as his primary language.

  The employer has the burden of proving compliance with the notification requirements of §195(1)(a).  There is no evidence that Defendants ever provided any NYLL compliant wage and hour notices to Plaintiff.  Defendants admitted they did not do so.  (Tr. 109:21-110:1; 138:9-16).

Accordingly, Plaintiff is entitled to damages of $50 per week of violation, up to a maximum of $5,000.

The NYLL also requires employers to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage." NYLL § 195(3). The wage statement must list the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

An employee who does not receive such statements can recover $250 per day of violation, up to a maximum of $5,000. NYLL § 198(1-d). There is no evidence in the record that Plaintiff ever received any document satisfying the requirements of NYLL § 195(3) from 2010 to December 2015. Defendants admitted that they did not provide any such document until December 2015. (Tr. 108:16-109:18). Accordingly, Plaintiff is entitled to statutory damages of $50 per day, up to a maximum of $5,000. NYLL §198(1-d).

F. Attorneys' Fees

The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . .

costs and such reasonable attorney's fees as may be allowed by the court").   Accordingly, Plaintiff should be awarded attorneys' fees and costs in an amount to be determined after trial.

G. <u>Plaintiff's Damages Calculations</u>

Plaintiff is entitled to recover damages in the following amounts:

<u>Unpaid Wages & Overtime</u>:  $142,986.75

<u>Liquidated Damages on Wages & Overtime</u>: $132,294.75

<u>Unpaid Spread of Hours Pay</u>: $12,591.50

<u>Liquidated Damages on Spread of Hours Pay</u>: $11,514.88

<u>Annual Wage Notice</u>: $5,000

<u>Weekly Wage Statement</u>: $5,000

Plaintiff is entitled to pre-judgment interest on unpaid minimum and overtime wages and spread of hours to be determined at the time of judgment.

Plaintiff is entitled to costs and reasonable attorneys' fees, in an amount to be determined.

The judgment against Defendants should provide that if any amounts remain unpaid ninety days after issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the judgment shall automatically increase by fifteen percent.  NYLL § 198(4).

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that Plaintiff be granted judgment against the Defendants, as set out herein.

Respectfully submitted,

/s/ Sara J. Isaacson
Sara J. Isaacson
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200

18