**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FLORENCIO MENDOZA JAVA, individually and on behalf of others similarly situated,

                Plaintiff,

- against –

EL AGUILA BAR RESTAURANT CORP. d/b/a EL AGUILA, LAS BANDERAS SPORTS BAR CATERING LOUNGE CORP. (d/b/a LAS BANDERAS SPORTS BAR), SANTIAGO ALMONTE AND JUAN ALMONTE,

                Defendants.

Case No. 16-CV-06691(JLC)

**APPEARING DEFENDANT'S FINDING OF FACTS AND CONLCUSION OF LAW**

The Law Office of Delmas A. Costin, Jr., represents, Defendants El Aguila Bar Restaurant Corp. d/b/a El Aguila ("El Aguila") and Juan Almonte ("Appearing Defendants") in the above referenced matter. Appearing Defendants present this this documentation in support of the testimony taken during the Bench Trial held on this matter on March 1 and request that the Court find that Plaintiff has not met his burden of proof at trial for Counts 1-6. A copy of the trial transcript is annexed hereto as **Exhibit A.**[1] A copy of NYLL §195(1) as it existed in 2008 is annexed hereto as **Exhibit B**.

## FINDINGS OF FACT

**A. Juan Almonte is the sole owner of El Aguila**

    a. Juan Almonte was the sole owner of El Aguila between 2008 and 2016. SA Tr. 90, JA Tr. 112.

---

[1] The initials of the witnesses identify who is providing the testimony. Thus, Florencio Mendoza's testimony can be recognized by "FM TR". Pedro Pichardo has the prefix PP., Santiago Almonte has the prefix SA., Juan Almonte has the prefix JA.

b. Plaintiff believes that Santiago Almonte told him on one occasion that Santiago Almonte and Juan Almonte were partners who owned El Aguila. FM TR 37.

c. Plaintiff never saw any paperwork which confirmed the partnership. FM TR 37.

d. Santiago Almonte initially interviewed prospective new employees. TR 113

e. Juan Almonte was the only person with the authority to hire employees. JA Tr. 113

f. Juan Almonte had the responsibility of paying the employees. PP TR68, SA 95, JA 117.

B. **Operational Information about El Aguila Bar Restaurant Corp.**

g. El Aguila was a bar and restaurant in the Bronx. FM TR 7-8, 26, JA TR 112.

h. Between 2010 and 2016 El Aguila was opened by 11 AM. FM TR 26, PP TR 62.

i. Between 2010 and 2016, El Aguila closed at 4 AM. FM TR 27, PP TR 62.

j. Between 2010 and December 2015 El Aguila operated with three shifts JA TR 112:

   i. 8 AM to 4 PM
   ii. 4 PM to 11 PM
   iii. 8 PM to 4 AM

k. By the end of 2015, El Aguila modified the employees' schedules so the morning employees worked from 10 AM to 6 PM JA TR 124.

l. At least 19 people worked for El Aguila in 2008. FM TR 25, 27, 28.

m. Santiago Almonte was the General Manager of El Aguila. PP TR 75, 89, JA TR 118.

n. Santiago Almonte's duties included meeting with people looking for work, negotiating agreements with others to hold events at El Aguila, and take notes for Juan Almonte SA TR 89.

o. Pedro Pichardo was the day manager between 2008 through 2014. PP TR 59.

p. Pedro Pichardo's duties included supervising the morning employees, making purchases and paying for purchases. PP TR 59.

q. Pedro Pichardo was Plaintiff's direct supervisor between 2008 and 2014.  FM TR 24.
r. Plaintiff worked for El Aguila between 2008 through July 2016.  FM TR 8,
s. Plaintiff's duties included cleaning El Aguila, delivering food, receiving purchases, some maintenance, fetch items from the basement for the cooks.  FM TR8, 22, 26, PP TR 61, and JA TR 113.
t. Records related to running El Aguila

## C. Juan Almonte's and El Aguila's policy was to pay the minimum wage to all employees including plaintiff.

a. Juan Almonte posted a minimum wage poster on the wall by the cash register and on the wall by the bar.  JA TR 112-113, 121
b. The minimum wage posters were in Spanish and English.  JA TR 112-113.
c. Between 2010 and 2016, Juan Almonte made sure that the signs were posted at the on the walls near the bar and cash register.  JA TR 113, 116.
d. The posters were sent to Juan Almonte by his accountant, ADP and an insurance company.  JA TR 126.
e. Plaintiff saw the minimum wage posters and understood that he was entitled to be paid the minimum wage.  FM TR 38.
f. Juan Almonte had the responsibility of paying the employees.  PP TR68, SA 95, JA 117.
g. Santiago Almonte assumed Plaintiff worked his scheduled hours unless he Plaintiff's informed him otherwise. SA TR 96
h. Santiago Almonte provided information about the hours and schedules worked and provided that to Juan Almonte.  SA TR95
i. Juan Almonte paid all employees based on the hours they were scheduled.  JA TA 118.
j. Juan Almonte paid all employees the minimum wage for their scheduled shift, even if he knew that they did not work the full shift.  JA TR 118.
k. Juan Almonte wanted to keep his employees happy.  JA TR 118.

3

    l. Juan Almonte wanted his employees to realize that he was not deceiving them. JA TR 119.

    m. Juan Almonte believes that "for the business to be successful, it was necessary for me to keep the employees happy." JA TA 119.

    n. Juan Almonte tried to pay a little more than the minimum wage. JA TR 121.

### D. Plaintiff was Scheduled to work exactly 40 hours per week

    a. Juan Almonte hired Plaintiff in 2008. JA TR 113.

    b. Between 2010- July 2013, Plaintiff was scheduled to work 8AM to 4 PM. PP TR 62-63, 80, SA TR92, JA TR 120.

    c. Between July 2012 through December 2015, Plaintiff worked from 8AM to 4 PM four times per week. JA TR122.

    d. Between July 2012 through December 2015, Plaintiff the night shift on Sunday nights. TR. 122

    e. The night shift began at 8 PM and ended at 4 AM. JA TR 112.

    f. Between December 2015 and July 2016, Plaintiff was scheduled to work from 10 AM through 6 PM. JA TR 124.

    g. Plaintiff never worked more than 40 hours in a single week. SA TR93.

    h. Plaintiff always worked five (5) days per week. SA TR 99. JA TR 120, 122, 124.

    i. No employees worked more than 40 hours per week. PP TR 63, SA TR 93.

    j. Plaintiff knows of no employee who worked more than 40 hours per week. FM TR 36.

    k. Juan Almonte would have paid Plaintiff overtime, if he worked more than 40 hours in one week. JA TR123.

    l. Plaintiff's schedule did not change. PP TR 63

    m. The schedule was not written down. JM TR 30, PP TR 63.

    n. El Aguila employees used to sign a paper to record the hours they worked. JA TR 114.

    o. Plaintiff refused to sign the paper and indicated that he did not have to sign in or sing out. JA TR 114.

4

p. The papers that reflected the employee's hours was destroyed or stolen after El Aguila closed in July 2016. JA TR 114-115.

### E. Plaintiff was paid more than the minimum wage.

u. In 2010 and 2011, Plaintiff was paid $300.00 per week in 2010 and 2011. FM TR15, TA TR 121.

v. By 2012, Plaintiff was paid between $325.00 to 345.00 per week. FM TR15, JA TR 122.

w. By 2013, Plaintiff was paid $325.00 to $330.00 per week. FM TR17, JA TR 122.

x. By December 2015, Plaintiff was paid at least $357.50 per week. FM TR17-18, JA TR 124.

### F. Plaintiff routinely failed to work his schedules which consisted for 40 hours per week.

a. Between 2010-2014, Plaintiff disappeared at least three times per week for at least one hour. PP TR69 -71

b. Plaintiff disappeared after taking a break. PP TR70.

c. Pedro Pichardo looked for Plaintiff but could not locate him. PP TR70.

d. While Plaintiff was absent from work, Pedro Pichardo performed Plaintiff's job of delivering food. PP TR 69.

e. In 2014, Plaintiff had sex with Margarita Carrasquillo once a month, while he should have been at work for El Aguila. FM TR 52.

f. Plaintiff states that all sexual encounters lasted 10-15 minutes. FM TR 52-53.

g. Plaintiff say Carrasquillo daily between 2010-2016. FM TR 51.

h. Pedro Pichardo told Juan Almonte that Plaintiff disappeared at least three times per week. PP TR 71.

i. Between 2012-2014, Plaintiff drank beer at work every day. PP TR 63-64, 66.

j. Between 2012-2014, Plaintiff would drink beers and hide the beer bottles in the bathroom. PP TR 63-64.

k. When Plaintiff was drunk at work, he became aggressive and used foul language. PP TR 64.

l. Between 2010-2014, Pedro Pichardo sent Plaintiff home between 20-25 times because he was too drunk to work. PP TR 84.

m. Between 2010-2014, Plaintiff called out from work about 20 times due to being drunk. PP TR 72.

n. Between 2010-2014, Plaintiff arrived to work late sometimes arriving at 8:30 AM. PP TR72.

o. Pedro Pichardo told Juan Almonte about Plaintiff's absences. PP TR 71.

p. Between 2012- 2016, Plaintiff would drink beer at El Aguila after completing his shift. FM TR 41, PP TR 65-66

q. Between 2013-2016, Plaintiff would drink six (6) beers after work. FM TR 41.

r. Juan Almonte told Plaintiff numerous times that being absent from work could cause result in Plaintiff's being fired. JA TR 133.

s. Juan Almonte felt sympathetic for Plaintiff, so he did not terminate him. Juan Almonte believe it would be hard for Plaintiff to not have a job since he did not have papers. JA TR 133.

t. Plaintiff did not come to work for two (2) to three (3) weeks after being shot. SA TR94-95.

**G. Las Banderas and Santiago Almonte fully compensated Plaintiff for all work performed.**

a. La Banderas is a bar owned by Santiago Almonte. FM TR 10.
b. Santiago Almonte hired Plaintiff to clean and accept deliveries. FM TR 8-10.
c. Plaintiff began working for Las Banderas in December 2015. FM TR8.
d. Plaintiff ceased working for Las Banderas in July 2016. FM TR8
e. Plaintiff's shift began at 4 PM on Saturdays. SA TR98
f. Plaintiff's shift ended at 6 PM SA TR98.

6

       g. Santiago Almonte paid Plaintiff $40.00 for the work he performed at Las Banderas.

## CONSLUSIONS OF LAW

### A. The Court Should Find Appearing Defendants' Witnesses Credible

Appearing Defendants request that the Court find their witnesses credible and find Plaintiff's testimony not credible. A trial judge sitting as the finder of fact is given a great deal of deference to determine witness credibility. See This is the province of the <u>Metzen v. United States</u>, 19 F.3d 795, 797-98 (2d Cir. 1994). The Second Circuit notes that "the trial judge can fully assess variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." <u>Id</u>.

### B. The Court Should Find That Plaintiff Worked Fewer Hours Than His Regularly Scheduled Shifts Which Totaled 40 Hours Per Week

The Appearing Defendants have not produced any records which show the number of hours Plaintiff worked each week. Plaintiff was paid a fixed amount each week while employed. FM TR 15-18, JA TR 121-124. Plaintiff was paid on his scheduled hours not hours actually worked.

Under the FLSA, if an employee receives a flat weekly salary, "there is a rebuttable presumption that the weekly salary covers 40 hours. The Court will then calculate the employee's regular hourly rate by dividing his weekly salary by forty hours. New York law also provides that, effective as of January 1, 2011, where an employer fails to pay a restaurant employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings. . . by the lesser of 40 hours or the actual number

7

of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. Xochimitl v Pita Grill of Hell's Kitchen, Inc., 2016 US Dist LEXIS 121259, at *19-20 (SDNY Sep. 8, 2016, No. 14-CV-10234 (JGK) (JLC)). (internal citations and punctuation omitted.)

The federal minimum wage during the relevant time period of August 25, 2010 through July 2016 is $7.25. FLSA §206. The New York State minimum wage increased during the relevant time period from $7.25 to $9.00 based on the information in the below chart. 12 NYCRR §146-1.2.

The below chart simply divides the "weekly pay received" by plaintiff by 40 hours per week to determine the "hourly rate of pay."

| Start of Time Period | End of Time Period | Weekly Pay Received | Hourly Rate of Pay | NYS Min. Wage | Was Plaintiff Paid More Than the Minimum Wage |
|---|---|---|---|---|---|
| 8/25/2010 | 12/31/2011 | $300.00 | $7.50 | $7.25 | YES |
| 1/1/2012 | 12/30/2012 | $325.00 | $8.13 | $7.25 | YES |
| 12/31/2013 | 12/30/2013 | $325.00 | $8.13 | $7.25 | YES |
| 12/31/2013 | 12/30/2014 | $325.00 | $8.13 | $8.00 | YES |
| 12/31/2014 | 12/30/2015 | $325.00 | $8.13 | $8.75 | NO |
| 12/31/2015 | 7/26/2016 | $357.00 | $8.93 | $9.00 | NO |

Plaintiff, however alleges that he worked 12 hours days, six (6) days per week for a total of 72 hours per week and only took off one (1) week during that time period. Appearing Defendants' witnesses state that Plaintiff was scheduled to work 8 hours days, five (5) days per for a total of 40 hours.

Appearing Defendants request that the court find their witnesses credible regarding the hours worked and money paid to Plaintiff. The testimony shows that no employee of El Aguila worked overtime. PP TR 63, SA TR 93. Even Plaintiff is not aware of any employee who

8

worked overtime. FM TR 36. It does not sense that Plaintiff and Plaintiff alone would be allowed to work overtime and essentially work the equivalent of two full time jobs. Juan Almonte was fully aware of the minimum wage law and tried to pay it faithfully.

Plaintiff was scheduled to work 40 hours. He was paid for 40 hours of work even though he routinely failed to provide 40 hours of work each week. Between 2010-2014, Plaintiff disappeared for at least one hour at least three times per week. PP TR 69-71. Thus, Plaintiff worked no more than 37 hours per week during that time period. Additionally, we know that between December 2015 through July 2016, Plaintiff worked at Las Banderas for two hours per week on a Saturday. SA TR 98. Thus Plaintiff failed to provide El Aguila with two hours of work every week. Plaintiff was frequently drunk at work between 2012-2016, he was sent home nearly 20-25 times due to being drunk at work, he called out from work approximately 20 times due to be drunk. Juan Almonte had the power to not pay Plaintiff for missing his scheduled hours, but he made a decision to ensure that his employees were paid based on their schedule in order to keep them happy. He should not be penalized for that decision.

All of this evidence shows that Plaintiff did not work anywhere near 40 hours. Defendant worked at most 37 hours per week based his multiple weekly disappearances and 35 hours between December 2015 and July 2016. As a result, his actual hourly rate of pay for is represented in the below chart. If the court finds Appearing Defendants' witnesses credible, then Plaintiff does not have overtime claims and a New York State Labor Law spread of hours claim. The below chart shows Plaintiff's actual wage which is determined by dividing Weekly income by number of hours actually worked. In all scenarios, Plaintiff was paid more than the federal and state minimum wage.

9

PFF-El Aguila

| Start of Time Period | End of Time Period | Weekly Pay Received | Hours Worked | Actual Rate of Pay | NYS Min. Wage | Was Plaintiff Paid More Than the Minimum Wage |
|---|---|---|---|---|---|---|
| 8/25/2010 | 12/31/2011 | $300.00 | 37 | $8.11 | $7.25 | YES |
| 1/1/2012 | 12/31/2012 | $325.00 | 37 | $8.78 | $7.25 | YES |
| 1/1/2013 | 12/30/2013 | $325.00 | 37 | $8.78 | $7.25 | YES |
| 12/31/2013 | 12/30/2014 | $325.00 | 37 | $8.78 | $8.00 | YES |
| 12/31/2014 | 12/30/2015 | $325.00 | 37 | $8.78 | $8.75 | YES |
| 12/31/2015 | 7/26/2016 | $357.00 | 35 | $10.20 | $9.00 | YES |

**C. Appearing Defendants are not required to provide a written notice under the New York Labor law**

Plaintiff was hired in 2008. At that time, New York State did not require an employer to provide *written* notice of the rate of pay and the regular payday. See NYLL §195(1). In 2008 NYLL §195(1) required an employer to notify his employees, at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article." Please see **Exhibit B.** The legislation did not require written notice until October 26, 2009. Appearing Defendants were not required to provide Plaintiff anything in writing regarding his rate of pay or regular payday as of the date of Plaintiff's employment. Even if Appearing Defendants had a duty to provide anything in writing to Plaintiff at the time of his hiring, they no longer have the duty to maintain the document. The current version of NYLL §195(1) requires that the written notice be maintained for six years. Plaintiff was an employee for Appearing Defendants from 2008-2016 – a total of eight years. By 2014, appearing Defendants no longer had a duty to maintain any notice pursuant to PL §195(1) which states in pertinent part "Each time the employer provides such notice to an employee, the

10

PFF-El Aguila

employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

## CONCLUSIONS

For all of the reasons stated Appearing Defendants request that the court dismiss count 1-6 of the complaint.

Dated: Bronx, NY
March 16, 2018

                                                Respectfully submitted,

                                                _____/s/_____
                                                Delmas A. Costin, Jr., Esq.
                                                The Law Office of Delmas A. Costin, Jr., P.C.
                                                *Attorneys for Defendants: El Aguila and Juan Almonte*
                                                177 E. 161st Street
                                                Bronx, NY 10451
                                                (718) 618-0589 (O)
                                                (347) 510-0099 (F)
                                                dacostin@dacostinlaw.com

To:    Sara J. Isaacson, Esq.
          Shawn Clark, Esq.
          Michael Faillace & Associates, P.C.
          60 East 42nd Street, Suite 2540
          New York, NY 10165
          (212) 317-1200
          michael@faillacelaw.com
          sisaacson@faillacelaw.com